JOHN C. BROWN (State Bar # 195804)
Redenbacher & Brown, LLP
580 California Street, Suite 1600
San Francisco, California 94104
Phone: (415) 409-8600
Facsimile: (415) 520-0141
Email: jbrown@redbrownlaw.com

Attorneys for Defendant, EMCORE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S., INC., *et al.*,<br><br>Plaintiff,<br><br>vs.<br><br>EMCORE CORPORATION, *et al.*,<br><br>Defendants. | Case No.: C08-3248 HRL<br><br>**MEMORANDUM IN SUPPORT OF MOTION BY EMCORE CORPORATION TO DISMISS COMPLAINT (F.R.C.P. 12(b)(6))**<br><br>Date of Motion: September 30, 2008<br>Time of Motion: 10:00 a.m.<br>Ctrm: Courtroom 2, 5th Floor<br>Judge: The Hon. Howard R. Lloyd<br>Case Filed: July 3, 2008<br>Trial date: None |

## I.   INTRODUCTION

Plaintiffs AVAGO TECHNOLOGIES U.S., INC., AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, AVAGO TECHNOLOGIES JAPAN, LTD., and AVAGO TECHNOLOGIES CANADA CORPORATION bring this action against defendant EMCORE CORPORATION ("Emcore") based on its manufacture of an allegedly defective product. Plaintiffs do not allege any contractual relationship with Emcore, but rather allege that they distributed a product that contained a defective part manufactured by Emcore.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY EMCORE CORPORATION TO DISMISS COMPLAINT (F.R.C.P. 12(b)(6)); C 08-3248 HRL

1

Plaintiffs make one claim against Emcore for "Negligent Interference With Prospective Economic Advantage" ("NIWPEA") based on the business they claim to have lost as a result of Emcore's allegedly negligent manufacture. However, California law does not allow a merchant to bring a claim against a manufacturer for pure economic losses based on negligence. As such, Emcore requests that plaintiffs' Complaint be dismissed against it with prejudice.

## II.  STATEMENT OF ISSUES TO BE DECIDED

A.  Can one make a claim for NIWPEA without stating that the defendant owes him a duty of care?

B.  Can one make a claim for NIWPEA based on the manufacture of defective goods without alleging physical damages other than the negligently manufactured product?

C.  Can one make a claim for NIWPEA when his only injury is part of the ordinary business risk?

D.  Can one make a claim for NIWPEA without making any allegation that the alleged wrongful act was an "independently wrongful" act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard, and that it constituted "unfair competition?"

## III.  STATEMENT OF ALLEGATIONS IN THE COMPLAINT

Plaintiffs supply optoelectronics components, including fiber optic transceivers. Complaint, ¶ 11. Plaintiffs claim to be the assignee of a Global Manufacturing Services Agreement ("the Agreement") from Agilent Technologies Incorporated by which defendant Venture Corporation Limited ("Venture") agreed to manufacture such transceivers. *Id.*, ¶¶ 13, 14. Vertical Cavity Surface Emitting Lasers, or "VCSELs," (pronounced "vixel") are essential components of these transceivers. *Id.*, ¶ 12. Venture subcontracted with Emcore for the manufacture of VCSEL die used in the transceivers. *Id.*, ¶ 14.

Plaintiffs allege that the execution of contracts to which plaintiffs were a party providing for the delivery of finished transceivers would have been lucrative. Emcore allegedly knew that the VCSEL die would be incorporated into the finished transceivers, that those products would be sold to plaintiffs' customers, and that its negligent manufacturing would result in disruption

2

of plaintiffs' commercial relationships.  Complaint, ¶ 14.

Plaintiffs claim to have identified failures in their transceivers due to defective VCSEL die. Complaint, ¶ 15.  Plaintiffs conclude that their sale and delivery of transceivers containing defective VCSEL die resulted in monetary loss and harm to their reputation.  Complaint, ¶¶ 16 and 17.

Based on these factual allegations, plaintiffs state three causes of action:  Breach of Contract against Venture; Breach of Express Warranty against Venture; and, NIWPEA against Emcore.  Plaintiffs argue that Emcore was negligent in that it "did not act with due care in design and manufacture of the VCSEL die sold to Venture."  Complaint, ¶ 15.

Plaintiffs, however, fail to make a number of key allegations that are significant for purposes of evaluating this motion.  Plaintiffs do not allege that Emcore owed them any "duty of care" to protect their economic interests based on a contractual or other special relationship. Plaintiffs do not allege any "physical damages" based on defective die in the transceivers, other than claiming that the transceivers were defective because of the VCSEL die.  Plaintiffs do not allege that they suffered any "injury outside of the ordinary business risk."  Finally, plaintiffs do not allege that Emcore's conduct was unlawful, improperly motivated, or that it "fell outside the boundaries of fair competition."

## IV.    PLAINTIFFS DO NOT STATE A CLAIM FOR NIWPEA

### A.    Plaintiffs Cannot Make a Claim for NIWPEA, Because They Fail to Allege a "Duty of Care" Owed by Emcore to Protect Their Economic Interests

Liability for negligent conduct may only be imposed where there is a "duty of care" owed by the defendant to the plaintiff or to a class of which the plaintiff is a member.  *J'Aire Corp. v. Gregory* 24 Cal.3d 799, 803 (1979), c*iting Richards v. Stanley,* 43 Cal.2d 60, 63 (1954).  Whether a duty is owed is simply a shorthand way of phrasing what is "the essential question whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."  *J'Aire Corp. v. Gregory,* 24 Cal.3d at 803 (citations omitted).  However, a plaintiff cannot allege a "duty of care" specifically to protect its economic interests in the absence of contractual privity without showing the existence of a special relationship with the defendant.  *See Id.* at 804.

3

Plaintiffs do not allege that Emcore owed them or a class to which they belong any "duty of care." Nor do plaintiffs allege any contractual, special, or other relationship with Emcore. For this reason alone, they do not state a claim for NIWPEA.

**B.   Plaintiffs Cannot Make a Claim for NIWPEA Based on Emcore's Alleged Defective Manufacture of Goods, Because They Fail to State That They Suffered Physical Damages, Apart From the Negligently Caused Defect in the Product**

In actions for negligence, a manufacturer's liability is limited to damages based on physical injuries; no recovery is allowed for economic loss alone. *Aas v. Superior Court of San Diego*, 24 Cal.4th 627, 635-636 (2000), *citing Seely v. White Motor Co.*, 63 Cal.2d 9, 18 (1965). Further, the requisite physical injury must be distinct from the physical defect in the product caused by the alleged negligence. *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 299 (1984) *citing Fentress v. Van Etta Motors*, 157 Cal.App.2d Supp. 863 (1958). When the defect and the damage are one and the same, the defect may not be considered to have caused physical injury. *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d at 299.[1]

---

[1] Plaintiffs do not allege the requisite distinct physical damages. The only defects or damages plaintiffs allege are failures of transceivers based on allegedly defective VCSEL die. Complaint at ¶¶ 14, 15. The court in *Livermore Amador Valley Wastewater Management Agency v. Northwest Pipe & Casing Co.*, 915 F.Supp. 1066 (N.D.Cal. 1995), evaluated a similar issue, finding that a coal tar enamel lined pipe was one product, not two products consisting of coal tar enamel lining and pipe. *Id.* at 1070-1071. The court stated that the fact that the pipe may have both a metal component and a lining component does not mean that it is two separate products; damage to the enamel lining was the same as damage to the pipe. *Id.* In reaching its conclusion, the court cited *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 867 (1986), for the proposition that, since all but the very simplest of machines have component parts, a contrary holding would require a finding of "property damage" in virtually every case where a product damages itself, which holding would eliminate the distinction between warranty and strict products liability. Similarly, here, the allegedly damaged VCSEL die component manufactured by Emcore is considered the

In the leading case of *Seely v. White Motor Co.*, the California Supreme Court explained why contract and warranty law, not tort law, should govern the economic relationship between a buyer and a seller and between a manufacturer and a consumer:

> [A manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. [citations omitted]

63 Cal.2d at 18. This rule is necessary so that the Uniform Commercial Code, governing commercial transactions, is not completely subsumed by the law of tort. *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 298 (1984).

In *Livermore Amador Valley Wastewater Management Agency v. Northwest Pipe & Casing Co.*, 915 F.Supp. 1066, California's Northern District Court applied the foregoing principles in a negligence action brought by a wastewater manager for damages against the manufacturer and the supplier of pipe for alleged defect in the lining of the pipe. The court found that, under California law, the manager failed to allege damage from defects to property other than to the pipe itself. As such, any damages sought were solely economic damages that could not be recovered under tort law.

Plaintiffs do not allege that they suffered property damage or personal injury, apart from

---

same property as the transceiver in which the die is incorporated, and any damage to the VCSEL die does not constitute separate physical damages.

5

the allegedly defective die manufactured by Emcore. As such, they cannot recover in negligence for their economic loss, and they do not state a claim for NIWPEA.

**C.  Plaintiffs Cannot Make a Claim for NIWPEA Based on Injury That Is Part of Their Ordinary Business Risk**

Recovery for NIWPEA is limited to instances where the risk of harm is not part of the plaintiff's ordinary business risk. *J'Aire Corp. v. Gregory*, 24 Cal.3d at 808. When the buyer of allegedly defective goods is a merchant, that buyer is limited to remedies that may arise under the law of sales. *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d at 299-300. This doctrine is based on the rationale that a knowledgeable merchant weighs the expansiveness of warranty coverage as part of the cost of goods and takes on lesser or greater risk of product defects as part of a business decision to spend more or less for the product. *See Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1453 (1995).

The economic losses claimed by plaintiffs were "ordinary business risks." Because they allege no other damages, plaintiffs cannot make a claim for NIWPEA.

**D.  Plaintiffs Do Not State a Claim for NIWPEA, Because They Fail to Allege That Emcore's Allegedly Negligent Manufacture Was "Independently Wrongful" and Constituted "Unfair Competition"**

To state a cause of action for NIWPEA, the plaintiff must show wrongful conduct other than the act of the interference itself. *National Medical Transp. Network v. Deloitte & Touche*, 62 Cal. App. 4th 412, 440 (1998); *Reeves v. Hanlon*, 33 Cal.4th 1140, 1152-1153 (2004). Further, the plaintiff must show that the defendant disrupted or diverted the plaintiff's business relationship *by improper methods that fall outside the boundaries of fair competition*. *Settimo Associates v. Environ Systems, Inc.*, 14 Cal.App.4th 842, 845 (1993).

An act is "independently wrongful" for purposes of NIWPEA if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard; an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive. *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal.App.4th 1528, 1544 (2007) *citing Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134,

6

1155-1157, 1159 (2003) and *Reeves v. Hanlon*, 33 Cal.4th at 1152.  Thus, the plaintiff must present facts indicating the defendant's interference is based on facts that take the defendant's actions out of the realm of legitimate business transactions.  *See Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d 648, 658, 660 (1983).  This wrongfulness may lie in the method used; for example, a defendant might usurp the prospective advantage by means of fraud, misrepresentation or duress.  *Id. citing* Prosser, *Torts* (4th ed. 1971) 952-953, 959-960.  More commonly, however, the wrong will be found in defendant's motive.  *Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d at 659.

A merely "negligent" act, without some showing of unfair competition, improper method, or improper motive, cannot suffice as the predicate act upon which a NIWPEA claim may be based.  Because plaintiffs make no allegation about Emcore's conduct other than that it was "negligent," they fail to allege the requisite wrongful conduct on which they can base a claim for NIWPEA.  For this reason alone, they do not state a claim for NIWPEA.

## V.  CONCLUSION

Plaintiffs' theory of liability—that a manufacturer should be liable in tort law for a distributor's lost business opportunities based on a product defect—is a radical departure from established law governing the relations of merchants.  Allowing distributors and end users to proceed on such a theory that effectively makes manufacturers such as Emcore insurers of their profits would fundamentally and drastically alter those relations.  Acceptance of plaintiffs' theory would also open the floodgates to waves of litigation by persons against manufacturers for their allegedly "foreseeable" injuries.  California law and public policy simply disdain these types of attempts to transmogrify a run-of-the-mill warranty dispute into the type of tort action that starts down the "slippery slope" of completely subsuming the Uniform Commercial Code.

Plaintiffs already have a remedy against the party with which they are in privity of contract, and that remedy protects their interests and governs in this situation.  For the reasons set forth above, Emcore respectfully requests that plaintiffs' claims be dismissed with prejudice against it.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY EMCORE CORPORATION TO DISMISS COMPLAINT (F.R.C.P. 12(b)(6)); C 08-3248 HRL

| | | |
|---|---|---|
| 1 | Dated:   August 4, 2008 | REDENBACHER & BROWN, LLP |
| 2 | | |
| 3 | | By: *John C. Brown* |
| 4 | | JOHN C. BROWN<br>Attorneys for defendant |
| 5 | | EMCORE CORPORATION |

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY EMCORE CORPORATION TO DISMISS COMPLAINT (F.R.C.P. 12(b)(6)); C 08-3248 HRL