1    MATTHEW P. LEWIS (SBN 155516)
     CAROLINE A.H. SAYERS (SBN 209815)
2    WHITE & CASE LLP
     633 W. Fifth Street, Suite 1900
3    Los Angeles, CA  90071-2007
     Telephone:  (213) 620-7700
4    Facsimile:  (213) 452-2329
     Email:     mlewis@whitecase.com
5    Email:     csayers@whitecase.com

6    Attorneys for Defendant
     VENTURE CORPORATION LIMITED

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

| | |
|---|---|
| 12  AVAGO TECHNOLOGIES U.S., INC., a Delaware corporation, AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, AVAGO TECHNOLOGIES JAPAN, LTD., AVAGO TECHNOLOGIES CANADA CORPORATION, | Case No.  CV-08-03248-JW  **NOTICE OF MOTION AND MOTION OF VENTURE CORPORATION LIMITED TO DISMISS THE COMPLAINT OF PLAINTIFFS AVAGO TECHNOLOGIES U.S., INC., AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, AVAGO TECHNOLOGIES JAPAN, LTD., AVAGO TECHNOLOGIES CANADA CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANDREW TAY FILED IN SUPPORT** |
|  Plaintiffs, | |
|  v. | |
|  EMCORE CORPORATION,  a New Jersey corporation; VENTURE CORPORATION LIMITED fka VENTURE MANUFACTURING (S) LTD., a Singapore corporation, | |
|  Defendants. | Hearing Date:   November 10, 2008 Hearing Time:   9:00 a.m. Hearing Place:   Courtroom of the Honorable                    James Ware, Courtroom 8  Complaint Filed:  July 3, 2008 |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE THAT** on November 10, 2008, at 9:00 a.m., or as soon

3   thereafter as counsel may be heard before the Honorable James Ware, United States District

4   Judge, Courtroom 8, United States Courthouse, 280 South 1st Street, San Jose, California, 95113,

5   Defendant Venture Corporation Limited ("Venture") will and hereby does move for an Order

6   dismissing with prejudice each of the claims for relief asserted against Venture by Plaintiffs

7   Avago Technologies U.S., Inc., Avago Technologies International Sales Pte. Limited, Avago

8   Technologies Japan, Ltd., Avago Technologies Canada Corporation (collectively, "Avago").

9          This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on

10  the ground that Avago fails to state a claim against Venture upon which relief can be granted.

11  Avago fails to state a claim for breach of contract because it fails to allege how the goods at issue

12  here did not comply with the terms of the contract pursuant to which they were sold.  Avago also

13  fails to state a claim for breach of an express warranty because it fails to allege that Venture made

14  any applicable warranty with respect to the component part at issue, which component part Avago

15  alleges is defective and caused the failure of the entire product.

16         This Motion is based on this Notice of Motion, the attached Memorandum of Points and

17  Authorities, the Declaration of Andrew Tay submitted concurrently herewith, all papers and

18  records on file herein, and all matters of which the Court may take judicial notice, and such

19  further oral or documentary evidence or argument that the Court may consider.

20  Dated: September 4, 2008                    MATTHEW P. LEWIS
                                                CAROLINE A.H. SAYERS
21                                              WHITE & CASE LLP

22

23                                              By: _____

24                                                  Matthew P. Lewis
                                                Attorneys for Defendant
25                                              VENTURE CORPORATION LIMITED

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
                                                                                    **Page(s)**

3

I.    INTRODUCTION ................................................................................................ 1

4

II.   STATEMENT OF FACTS .................................................................................... 2

5

III.  ARGUMENT ........................................................................................................ 4

6

      A.  Legal Standards Governing Motions to Dismiss .......................................... 5

7

      B.  The Complaint Fails To State a Claim for Breach of Contract
          Because It Does Not Establish That Venture Breached The GMSA

8
          By Delivering Allegedly Non-Conforming Goods .................................... 6

9

      C.  The Complaint Fail To State A Claim For Breach Of Warranty
          Because It Does Not Establish That Venture Breached The

10
          Express Warranty In The GMSA ............................................................ 6

11

IV.   CONCLUSION .................................................................................................. 6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

LOSANGELES 778904 v1 (2K)

# TABLE OF AUTHORITIES

**Pages(s)**

## FEDERAL CASES

*Cholla Ready Mix, Inc.  v. Civish*, 382 F.3d 969 ............................................................ 4

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 ................................................................ 6

*National Association for Advancement of Psychoanalysis v. Cal. Board of Psychology*,
    228 F.3d 1043 ........................................................................................................... 4

*Steckman v. Hart Brewing Insurance*, 143 F.3d 1293 .................................................... 4

*Thompson v. Ill. Department of Prof'l Regulation*, 300 F.3d 750 ................................... 4

*United States v. Ritchie*, 342 F.3d 903 ........................................................................... 4

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977 ......................................................................... 4

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 .................................................. 4

## STATE CASES

*Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887 ..................................... 5

*Keith v. Buchanan*, 173 Cal.App.3d 13 ........................................................................... 6

## STATE STATUTES

Cal. Com. Code § 2313 .................................................................................................... 6

## OTHER

2 Witkin, Calif. Proc., Pleading, § 251, p ....................................................................... 5

Federal Rule of Civil Procedure 12(b) ............................................................................ 1

VENTURE'S MOTION TO DISMISS AVAGO'S COMPLAINT
CASE NO.  C08-03248-JW

LOS ANGELES 778904 v1 (2K)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant Venture Corporation Limited ("Venture") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the Complaint ("Complaint") filed against it by Plaintiffs Avago Technologies U.S., Inc., Avago Technologies International Sales Pte. Limited, Avago Technologies Japan, Ltd., Avago Technologies Canada Corporation (collectively, "Avago"). Avago asserts two causes of action against Venture: (1) breach of contract; and (2) breach of warranty.

Avago sued Venture because Avago's fiber optic transceivers, which Venture assembled pursuant to Avago's express directions and specifications, experienced failures in the field. Avago's complaint, however, clearly and unequivocally points the finger for such failures at a component part called a "VCSEL" or "VCSEL die," manufactured by defendant Emcore Corporation ("Emcore").

Avago alleges as follows:

- "[T]hrough a process of reverse engineering and independent laboratory analysis, Avago was able to ascertain that <u>the failures in the fiber optic transceivers were a result of Emcore's negligent manufacture of the VCSEL wafers that resulted in a delamination between the mirror layers of the VCSEL.</u>" Complaint, ¶ 38 (emphasis added).

- "The damage suffered by Avago was closely connected to, and <u>indeed directly caused by the defective VCSEL die manufactured by Emcore.</u>" Complaint, ¶ 40 (emphasis added).

- Emcore's failure to exercise due care in the design and manufacture of the VCSEL die and its lack of diligence in resolving the problem is particularly blameworthy since <u>it was the origin of the harm to Avago</u> and continued even after the cause of the field failures was brought to Emcore's attention." Complaint, ¶ 41 (emphasis added).

Importantly, Venture's only promise or warranty regarding component parts was that

- 1 -

1   Venture would only use component parts that Avago authorized and directed Venture to use.

2   Complaint, Exh. A, Global Manufacturing Service Agreement ("GMSA") at ¶ 10.2 ("Venture

3   agrees to ensure that all components used in the [fiber optic transceivers] are manufactured by

4   suppliers on [Avago's Approved Vendor List].")  Emcore was Avago's approved vendor for the

5   VCSEL component part, and Avago directed Venture to use Emcore's VCSEL.  Declaration of

6   Andrew Tay ("Tay Decl."), ¶¶ 3- 6.  Venture did what it was contractually required and obligated

7   to do – Venture used Emcore's VCSEL when it assembled the transceivers.  Accordingly,

8   Venture cannot be liable for either breach of contract or breach of warranty, and Avago's

9   Complaint against Venture should be dismissed.

10                    **II.      STATEMENT OF FACTS**

11          On May 1, 2002, Agilent Technologies, Incorporated ("Agilent") and Venture entered into

12   a Global Manufacturing Services Agreement ("GMSA" or "Agreement").  Complaint, Exh. A,

13   GMSA.  Agilent assigned the GMSA to Avago effective December 1, 2005.  Complaint at ¶ 13.

14          The GMSA, which is attached to the Complaint, sets forth the parties' respective

15   obligations.  Under the GMSA, Venture is obligated to assemble and sell to Avago certain

16   products, including fiber optic transceivers, "based on the requirements provided by [Avago]."

17   Complaint, Exh. A, GMSA at p. 1, ¶ 1.1; see also id. at p. 1, ¶ 1.1.1.  Avago, conversely, is

18   required under the GMSA to provide Venture with Product Requirements (Complaint, Exh. A,

19   GMSA  at p. 2, ¶ 1.2), which are defined as "any requirement[s] for the development or

20   manufacture of Products provided by [Avago] to Venture, including all manufacturing

21   information, technical data and manuals, design information, drawings, documentation,

22   packaging requirements, testing requirements, Specifications, or any other criteria written and

23   provided to Venture by [Avago]."  Complaint, Exh. A, GMSA at p. 7, ¶ 2.53.  In other words,

24   Avago told Venture exactly how to assemble and test the fiber optic transceivers.  Tay Decl., ¶ 7.

25          Moreover, Venture can only procure component parts from vendors specified by Avago.

26   Tay Decl., ¶¶ 5-6.  Indeed, under the GMSA, Venture "agrees to buy all Components from

27   suppliers on the AVL [Approved Vendor List]."  Complaint, Exh. A, GMSA at p. 17, ¶ 9.1.

28          Under the GMSA and pursuant to Avago's express direction, Venture was required to

VENTURE'S MOTION TO DISMISS AVAGO'S COMPLAINT
CASE NO.  C08-03248-JW

1   purchase the VCSELs from Emcore. Complaint, Exh. A, GMSA at p. 17, ¶ 9.1; Tay Decl., ¶ 6.

2   Venture had no discretion to do otherwise. Id. In accordance with the GMSA and as required by

3   Avago, Venture used VCSELs supplied by Emcore when it assembled the transceivers. Tay

4   Decl., ¶ 6.

5       The Complaint alleges that because of "field failures of certain fiber optic transceivers,"

6   Avago's customers began returning the transceivers in November of 2005. Complaint, ¶ 15. The

7   Complaint further alleges that the field failures were "directly caused  by the defective VCSEL

8   die, manufacturered by Emcore." Complaint at ¶ 40; see also ¶¶ 15, 38 and 41.

9       However, nothing in the Complaint states that the VCSEL components did not conform to

10  the specifications provided by Avago. Additionally, nowhere in the GMSA did Venture promise

11  to take responsibility for allegedly defective component parts manufactured by one of Avago's

12  Approved Vendors. In fact, just the opposite is true. The warranty for Components is covered in

13  paragraph 10.2 of the GMSA, and it provides only that: "Venture will pass on to [Avago] all

14  Component Suppliers' warranties to the extent that they are transferrable. Venture agrees to

15  ensure that all Components used in the Product are manufactured by suppliers on [Avago's] AVL

16  [Approved Vendor List]." Complaint, Exh. A, GMSA at p. 20, ¶ 10.2. Venture does not warrant

17  or promise that the component parts will function forever, or that they will be free of defects.

18  Venture merely promises to purchase component parts from vendors approved by Avago, which

19  Venture did. Id.; Tay Decl., ¶ 6.

20      In section 10, the GMSA provides that "Venture warrants that all Products will: . . . (b)

21  Conform strictly to the Product Requirements (including those Specifications listed in Exhibit B),

22  and other criteria referred to in this Agreement; . . . (e) be free from defects in workmanship as

23  specified in the Agilent Acceptability Specification 930.610, as listed in Exhibit B . . . ."

24  Complaint, Exh. A, GMSA  at pages 19-20, ¶ 10.1; see also Complaint at ¶¶ 30-31.

25      It is important to note the actual definitions used in the GMSA. "Products" is a defined

26  term that is limited to "those assemblies, sub-assemblies, systems, and other products

27  manufactured by Venture hereunder identified on a Business Unit Addendum, or if absent from

28  such addenda, is listed on a Product Exhibit to be appended to this Agreement." Complaint, Exh.

- 3 -

A, GMSA at p. 8, ¶ 2.54. "Components," on the other hand, such as the VCSEL, are "the piece parts, subassemblies, software, OEM components and products, and all other materials incorporated by Venture into Products built for [Avago] Eligible Buyers." Complaint, Exh. A, GMSA at p. 4, ¶ 2.13. Clearly, Venture made no promises or warranties about components or component parts, other than to obtain them as directed by Avago.

## III.   ARGUMENT

### A.   Legal Standards Governing Motions to Dismiss

While courts generally must assume the truth of the facts alleged in a complaint when ruling on a motion to dismiss, courts need not accept allegations that are conclusory, that draw unreasonable or unwarranted factual inferences, or that are contradicted by documents referenced in a complaint or by other judicially noticeable facts. See, e.g., Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004); Steckman v. Hart Brewing Ins., 143 F.3d 1293, 1295-96 (9th Cir. 1998). As such, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000).

Moreover, when a document referenced in or attached to a complaint contradicts allegations in the complaint, the document controls. Thompson v. Ill. Dept. of Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (rejecting allegations contradicted by documents referred to in complaint); United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003)("When ruling on a Rule 12(b)(6) motion to dismiss . . . [a] court may . . . consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice . . ."); Van Buskirk v. CNN, Inc., 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.") (citation omitted).

Here, Avago attached the GMSA to its Complaint, and this Court can look to the GMSA in ruling on this motion.

- 4 -

**B.**   **The Complaint Fails To State a Claim for Breach of Contract Because it Does Not Establish that Venture Breached the GMSA by Delivering Allegedly Non-Conforming Goods**

In order to state a cause of action for breach of contract, a complaint must plead: "(1) the [existence of a] contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom." _Acoustics, Inc. v. Trepte Constr. Co._, 14 Cal. App. 3d 887, 913 (1971) (citing 2 Witkin, Calif. Proc., Pleading, § 251, p. 1226) (emphasis added). In its Complaint, Avago alleges that Venture breached the GMSA by providing Avago with "non-conforming products." However, nowhere in the complaint does Avago allege how the goods are non-conforming or how such alleged non-conformance constitutes a breach of the GMSA by Venture. Instead, Avago places the entire blame for the product failure on Emcore's VCSELs.

While the GMSA obligates Venture to "manufacture the Products in accordance with the Specifications set forth in Exhibit B and the other Product Requirements provided by Agilent" (Complaint, Exh. A at page 1, clause 1.1.1), it does not obligate Venture to ensure that all Component parts, such as the VCSEL, are made in accordance with Avago's specifications. "Products" by their definition in the GMSA are those "products manufactured by Venture" (Complaint, Exh. A at page 8, clause 2.54). On the other hand, a "Component" is "material incorporated by Venture into Products." Indeed, Venture was only obligated with respect to "Components" to "buy all Components from suppliers on the AVL [Approved Vendor List]." Complaint, Exh. A, GMSA at p. 17, ¶ 9.1. Emcore was the vendor from which Avago _required_ Venture to purchase VCSELs, and Venture did just that. Tay Decl., ¶ 6.

Moreover, other than stating that "the fiber optic transceivers failed as a result of a delamination between the mirror layers of the VCSEL wafers" (Complaint at ¶ 24), the Complaint does not state how the VCSEL parts were non-conforming goods that did not comply with Avago's specifications.

Thus, the Complaint does not state a claim for breach of contract against Venture. Venture did what it was required and directed by Avago and the GMSA to do – use Emcore's

- 5 -

1   VCSEL as a component part.  Even if the component part was defective (as Avago alleges), this

2   does not mean that Venture breached the parties' contract.

3   **C.   The Complaint Fails To State a Claim for Breach of Warranty Because it Does Not
        Establish that Venture Breached the Express Warranty in the GMSA**

5            In order to state a claim for breach of an express warranty, a complaint must set forth the

6   creation of an express warranty by an affirmation, promise, or description relating to the goods at

7   issue that becomes the basis of the bargain between the buyer and the seller (Cal. Com. Code §

8   2313(1)) and the breach of that warranty by the goods falling short of that affirmation, promise or

9   description.  Keith v. Buchanan, 173 Cal. App. 3d 13, 20 (1985).

10           Here, the Complaint alleges that Venture breached its warranty to Avago by "failing to

11  produce fiber optic transceivers that confirmed [sic] to the specifications and met all quality

12  requirements."  Complaint at ¶ 33.  But the Complaint unequivocally alleges that the transceivers

13  failed because the Emcore VCSELs were defective.  Complaint at ¶¶ 15, 38-41.

14           As explained above, the VCSEL component does not fall within the definition of

15  "Product" under the GMSA, which covers only items manufactured (assembled) by Venture.

16  Complaint, Ex. A, GMSA at p. 8, ¶ 2.54.  Instead, the VCSEL is a Component (as defined in

17  ¶ 2.13 of the GMSA).  The only warranty associated with the VCSEL component is contained in

18  paragraph 10.2 of the GMSA, which provides:  "Components Warranty.  Venture will pass on to

19  [Avago] all Component Suppliers' warranties to the extent that they are transferable.  Venture

20  agrees to ensure that all Components used in the Product are manufactured by suppliers on [the]

21  AVL [Approved Vendor List]."

22           Emcore was in fact the Approved Vendor for the VCSEL component part, and Venture

23  obtained the VCSELs from Emcore as required and as instructed. Tay Decl., ¶¶ 5-6.  Thus,

24  Venture complied with the terms of the express warranty contained in the GMSA, and the

25  Complaint fails to state a cause of action for breach of express warranty.

26                              **IV.   CONCLUSION**

27           In dismissing the Complaint, the Court should do so *with prejudice* because Avago

28  "cannot cure the flaws in [its] pleading."  See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1038-

                                    - 6 -

1   39 (9th Cir. 2002) ("Because any amendment would be futile, there [is] no need to prolong the

2   litigation by permitting further amendment."). The GMSA clearly sets forth Venture's

3   obligations and warranties; any amendment to the Complaint will not change those obligations

4   and warranties.

5          For the foregoing reasons, Venture respectfully request that this Court grant its motion to

6   dismiss all claims against it in Avago's Complaint with prejudice.

7

8   Dated: September 4, 2008                              MATTHEW P. LEWIS
                                                          CAROLINE A.H. SAYERS
9                                                         WHITE & CASE LLP

10

11                                                        By: _____
                                                              Matthew P. Lewis
12                                                        Attorneys for Defendant
                                                          VENTURE CORPORATION LIMITED

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                          VENTURE'S MOTION TO DISMISS AVAGO'S COMPLAINT
                                                          CASE NO.  C08-03248-JW

# DECLARATION OF ANDREW TAY

I, Andrew Tay, declare as follows:

1. I am currently employed by Venture Corporation Limited ("Venture"). I am the TCS (Total Customer Satisfaction) Manager for Avago's fiber optic transceivers which Venture assembles at its facility in Malaysia called Technocom Systems Sdn Bhd. As the TCS Manager, I am responsible for managing and overseeing the operational groups of engineering, planning, purchasing and production for Venture's assembly of Avago's fiber optic transceivers. I received a Bachelor of Electrical Engineering, first class honors, from the University of Technology Malaysia in 1996. I have worked at Venture since 1996. I was a Test Engineer from 1996 to 2002; a Senior Test Engineer from 2002 to 2004; an Engineering Manager from 2004 to 2007; and I am now the TCS Manager. As a result of my duties and responsibilities as an engineer and manager at Venture over the past twelve years, I am intimately familiar with the engineering, planning, purchasing and assembly of Avago's fiber optic transceivers by Venture, and I am likewise very familiar with the parties' Global Manufacturing Services Agreement ("GMSA") and the parties' relationship thereunder. I have personal knowledge of the following facts, and if called as a witness I could and would competently testify thereto.

2. One of Venture's primary services is to act as a contracts manufacturer. This means that companies hire Venture to assemble products for them. Venture assembles products like printers, copiers and printed circuit board assemblies for many well-known companies such as Hewlett-Packard and IBM.

3. In its role as a contracts manufacturer, Venture does not typically design the

1    products that it is hired to assemble.  Instead, the companies that hire Venture bring

2    already-designed products to Venture for Venture to assemble.  These companies

3    either give Venture the component parts needed to assemble the products, and/or

4    they tell Venture which specific component parts Venture must purchase.  They

5    also tell Venture exactly where (i.e., from whom) Venture must purchase the

6    specific component parts.  The companies that hire Venture also specify the

7    detailed assembly processes and test procedures that Venture must use in

8    assembling the products.

9

10   4.  Prior to hiring Venture to assemble its fiber optic transceivers, Avago assembled

11   them itself.  Beginning in 2000, Avago hired Venture to begin taking over certain

12   aspects of the assembly process, and by 2004, Avago had transferred the entire

13   assembly process to Venture.  Most of the machines that Venture uses during the

14   assembly process are machines that Avago owns and which Avago formerly used

15   when Avago was assembling the transceivers.

16

17   5.  Under the GMSA, Avago places an order for a certain number of fiber optic

18   transceivers.  Venture then assembles the requested number of transceivers and

19   makes them available for shipment to Avago.  Pursuant to paragraphs 2.0, 2.1, 2.7

20   and 9.0 of the GMSA, Avago tells Venture exactly which component parts Venture

21   must purchase, and from whom Venture must purchase the component parts.

22   Under the GMSA and in the contracts manufacturing industry, the set of vendors

23   that are approved by owners or designers like Avago to supply the component parts

24   for use in assembling a particular product, are referred to as the Approved Vendor

25   List or AVL.  (See, ¶¶ 2.6 and 9.1 of the GMSA which define the term Approved

26   Vendor List.)  While the terminology uses the word "list," a single, written list does

27   not generally exist, but rather the owner or designer of the product (here Avago),

28   identifies for the contracts manufacturer (here Venture), the specific vendors from

- 2 -

LOSANGELES 785381 v1 (2K)

1   which the contracts manufacturer <u>must</u> purchase or obtain the necessary component

2   parts.

3

4   6. In its complaint, Avago alleges that the VCSEL manufactured by defendant

5   Emcore Corporation ("Emcore") is defective, and that transceivers which contain

6   the Emcore VCSEL have failed in the field and have been returned to Avago by

7   Avago's customers. The VCSEL is one of the component parts used to make the

8   fiber optic transceivers. Under the GMSA, Avago directed Venture to purchase the

9   VCSEL part from Emcore. In this case, Emcore was Avago's approved vendor for

10  the VCSEL part. Absent a contrary direction from Avago, Venture had no choice

11  but to purchase the VCSEL from Emcore; it could not purchase the VCSEL part

12  from any other vendor without Avago's permission.

13

14  7. Under the GMSA, Avago gave Venture the assembly specifications that Venture

15  follows in assembling the fiber optic transceivers. Indeed, as mentioned above, in

16  the assembly process Venture uses many of the same machines to assemble the

17  transceivers that Avago previously used when it assembled the transceivers itself.

18  Under the GMSA, Avago specifies all the test procedures that Venture must utilize

19  during the assembly process to ensure at various stages of the assembly process,

20  including at the final stage, that the transceivers work the way they are supposed to

21  work. In addition, Avago has quality assurance personnel on site at Venture's

22  facility. These Avago personnel inspect the assembly process and the transceivers

23

24

25

26

27

28

- 3 -

1  at various stages of the assembly process, including at the final stage, to ensure that

2  the transceivers have passed all the tests required by Avago, and that the

3  transceivers function the way they are supposed to when they leave Venture's

4  facility.

5

6

7      I declare under penalty of perjury under the laws of the United States of

8  America that the foregoing is true and correct and that this declaration was executed

9  by me on September 4, 2008 at Johor Bahru, Johor, Malaysia.

10

11  _____

12              Andrew Tay

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -