IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Avago Technologies U.S., Inc., et al., | NO. C 08-03248 JW |
| Plaintiffs, v. | **ORDER GRANTING DEFENDANT VENTURE'S MOTION TO DISMISS; DENYING DEFENDANT EMCORE'S MOTION TO DISMISS** |
| Venture Corp. Limited, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs[1] bring this diversity action against Venture Corp. Limited ("Venture") and Emcore Corp. ("Emcore") (collectively, "Defendants") alleging breach of contract, breach of express warranty and negligent interference with prospective economic advantage. Plaintiffs allege that Defendants manufactured and delivered faulty fiberoptic transceivers, a key product in Plaintiffs' optoelectronics line of products.

Presently before the Court are Defendant Venture's Motion to Dismiss (hereafter, "Venture Motion," Docket Item No. 16) and Defendant Emcore's Motion to Dismiss (hereafter, "Emcore Motion," Docket Item No. 7). The Court conducted a hearing on December 1, 2008. Based on the papers submitted to date and oral argument, the Court GRANTS Venture's Motion to Dismiss and DENIES Emcore's Motion to Dismiss.

---

[1] Plaintiffs are Avago Technologies U.S., Inc. ("Avago U.S."), Avago Technologies International Sales Pte. Limited ("Avago International"), Avago Technologies Japan, Ltd. ("Avago Japan"), and Avago Technologies Canada Corp. ("Avago Canada").

## II. BACKGROUND

Plaintiff Avago U.S. is a Delaware corporation with its principal place of business in San Jose, California.[2] Plaintiff Avago International is a Singaporean company with its principal place of business outside of the United States. (Complaint ¶ 2.) Plaintiff Avago Japan is a Japanese company with its principal place of business outside of the United States. (Id. ¶ 3.) Plaintiff Avago Canada is a Canadian company with its principal place of business outside the United States. (Id. ¶ 4.) Defendant Venture is a Singaporean company with its principal place of business in Singapore. (Id. ¶ 5.) Defendant Emcore is a New Jersey corporation with its principal place of business in Albuquerque, New Mexico. (Id. ¶ 6.)

In a Complaint filed on July 3, 2008, Plaintiffs allege as follows:

Plaintiffs supply analog interface components for communications, industrial and consumer applications. (Complaint ¶ 11.) One of the key products in Plaintiffs' optoelectronics category is its line of fiber optic transceivers. An essential component of Avago's fiber optic transceivers is a Vertical Cavity Surface Emitting Laser ("VCSEL" [pronounced "vixel"]). (Id. ¶ 12.) A VCSEL is a type of laser diode that emits light from its surface rather than its edge, producing a circular beam that is easy to couple with fiber. (Id.)

In May 2002, Agilent Technologies Inc. entered into a Global Manufacturing Services Agreement ("GMSA" or "Agreement") with Venture whereby Venture agreed to manufacture, test, pack, ship, and sell, among other things, fiber optic transceivers for Agilent. (Complaint ¶ 13-14.) Venture subcontracted with Emcore for the VCSEL die used in the transceivers. (Id.) In November 2005, the GMSA was assigned to Plaintiffs. (Id. ¶ 13.) Avago International began purchasing the transceivers under the GMSA and subcontracted with Avago U.S., Avago Japan and Avago Canada to sell the transceivers to their customers. (Id.) Venture and Emcore knew, or should have known, that Emcore's

---

[2] (Complaint for Breach of Contract; Non-Conforming Goods; Breach of Express Warranty; and Negligent Interference with Prospective Economic Advantage ¶ 1, hereafter, "Complaint," Docket Item No. 1.)

2

VCSEL die would be incorporated into finished transceivers, and that negligent manufacturing of the VCSEL die would result in the disruption of Plaintiffs' commercial relationships. (Id.)

Beginning in November 2006, Plaintiffs' customers reported failures of certain transceivers provided to Plaintiffs by Venture. Plaintiffs accepted the return of the defective products, made repairs or provided replacements and expended numerous resources dealing with unsatisfied customers. (Complaint ¶ 15.) As a result of selling millions of the defective transceivers to its customers, Plaintiffs suffered significant monetary loss and harm to their reputations. (Id. ¶¶ 16-17.) Through a process of reverse engineering and independent laboratory analysis, Plaintiffs, Venture and Emcore determined that the failures in the transceivers were a result of a delamination between the mirror layers of the Emcore VCSEL die sold to Venture. (Id. ¶ 15.)

On the basis of the allegations outlined above, Plaintiffs allege the three causes of action: (1) Breach of Contract against Venture; (2) Breach of Express Warranty against Venture; and (3) Negligent Interference with Prospective Economic Advantage against Emcore.

Presently before the Court are Defendants Venture and Emcore's Motions to Dismiss.

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

## IV. DISCUSSION

**A.     Venture's Motion to Dismiss**

Venture moves to dismiss Plaintiffs' First and Second Causes of Action on the ground that Plaintiffs' allegations fail to establish that Venture did not meet its contractual obligations under the GMSA. (Motion at 2.)

**1.     Plaintiffs' First Cause of Action for Breach of the GMSA**

Venture contends that the Complaint does not establish that it provided "non-conforming products" in breach of the GMSA on the ground that Venture was required to provide fiberoptic transceivers containing Emcore's VCSELs. (Venture Motion at 5.) According to Venture, although the transceivers may not work the way Plaintiffs would want, they are nonetheless conforming goods under the terms of the GMSA. (Venture Corporation Limited's Reply in Support of its Motion to Dismiss at 3, Docket Item No. 23.)

To state a cause of action for breach of contract, a plaintiff must sufficiently allege the following elements: (1) the existence of a contract; (2) the plaintiff's performance or excuse for failing to perform; (3) the defendant's breach; and (4) damage to the plaintiff resulting from the defendant's breach. McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006).

In this case, the only dispute concerning Plaintiffs' First Cause of Action is whether Plaintiffs have sufficiently alleged the third element of a breach of contract–Venture's breach. (Venture Motion at 5.) With respect to Venture's breach, Plaintiffs allege as follows:

> Venture breached the [GMSA] by, among other things, providing [Plaintiffs] with non-conforming products. (Complaint ¶ 25.)

4

The GMSA defines "Non-Conforming Products" as "any Product received by [Plaintiffs] or [their] customers that does not conform to the Product Information and/or General Technical Specifications stated in this Agreement."[3]  (Complaint, Ex. A § 2.41.)  The GMSA does not define "Product Information" or "General Technical Specifications."  However, it does impose the following obligations on Venture:

> Venture will . . . source Components and materials as needed to fulfill Venture's obligations to manufacture the Products in accordance with the Specifications set forth in <u>Exhibit B</u> and the other Product Requirements provided by [Plaintiffs].  (Complaint, Ex. A § 1.1.1.)

> Venture will . . . [m]anufacture, test, pack, ship and sell all Products in accordance with the terms of this Agreement.  (Complaint, Ex. A § 1.1.2.)

> Venture will . . . [m]eet the Supplier Performance Expectations described in <u>Section 15</u> below, and develop and maintain quality control standards consistent with those standards described in that Section.  (Complaint, Ex. A § 1.1.4.)

> Venture agrees to meet the quality standards and performance metrics set forth in <u>Exhibits B and J</u> to this Agreement.  (Complaint, Ex. A § 15.2.)

A "Product Requirement" is defined as

> any requirement for the development or manufacture of Products provided by [Plaintiffs] to Venture, including all manufacturing information, technical data and manuals, design information, drawings, documentation, packaging requirements, testing requirements, Specifications, or any other criteria written and provided to Venture by [Plaintiffs].

(Complaint, Ex. A § 2.53.)  "Specifications" are defined as "the General Technical Specifications listed in <u>Exhibit B</u>, along with any other specifications as may be mutually agreed."  (<u>Id.</u>, Ex. A § 2.61.)

In other words, the GMSA requires Venture to provide Plaintiffs with products that (1) are in accordance with the Specifications set forth in Exhibit B to the GMSA and any other written requirement provided by Plaintiffs to Venture, including all manufacturing information, technical data and manuals, design information, drawings, documentation, packaging requirements and testing requirements; (2) have been tested, packed, shipped and sold in accordance with the terms of the

---

[3]  A court may consider documents attached to a complaint when ruling on a Rule 12(b)(6) motion without converting it into a Rule 56 of Fed. R. Civ. P. motion.  <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

5

GMSA; and (3) meet specified quality standards and performance metrics set forth in Exhibits B and J. Any product provided to Plaintiffs that does not meet these criteria is non-conforming. (See Complaint, Ex. A § 2.41.)

Plaintiffs contend that they have sufficiently pleaded a breach of the GMSA because "one of the specifications was that the product actually work." (Plaintiffs' Opposition to Venture Corporation's Motion to Dismiss Complaint at 6, hereafter, "Venture Opposition," Docket Item No. 18.) However, there is no allegation or GMSA provision that says non-working products are nonconforming. According to the Complaint and the GMSA, Venture is only obligated to comply with the requirements, quality standards and performance metrics allegedly set forth in Exhibits B and J of the GMSA, as well as any other written requirements provided to Venture. None of these requirements are attached to the Complaint. Thus, Plaintiffs' allegation that "Venture breached the [GMSA] by, among other things, providing [Plaintiffs] with non-conforming products" is a mere conclusion that fails to provide "fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broundo, 544 U.S. 336, 346 (2005). Plaintiffs' "obligation to provide the 'grounds' of [their] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." Twombly, 550 U.S. 544, 127 S. Ct. at 1963-64.

Accordingly, the Court GRANTS Venture's Motion to Dismiss Plaintiffs' First Cause of Action for Breach of Contract. However, the Court finds that the defects identified with Plaintiffs' First Cause of Action may be cured by amendment. Thus, Plaintiffs are granted leave to amend their allegations consistent with the terms of this Order.

**2.     Plaintiffs' Second Cause of Action for Breach of Express Warranty**

Venture contends that the Complaint does not state a claim for breach of the express warranty because the VCSEL component does not fall within the express warranty provided by Venture in the GMSA. (Venture Motion at 6.)

6

To state a cause of action for breach of an express warranty, a plaintiff must sufficiently allege the following elements: (1) the exact terms of the warranty; (2) reasonable reliance on the warranty; and (3) a breach of warranty that proximately causes the plaintiff's injury. Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986).

Here, Plaintiff alleges as follows:

> Venture expressly warranted that all Products provided to [Plaintiffs] . . . would "conform strictly to the Product Requirements (Including those Specifications listed in Exhibit B)" and would conform to all other criteria referenced in the Agreement. (Complaint ¶ 30.) Venture also expressly warranted that all Products provided to [Plaintiffs] . . . would "[b]e free from defects in workmanship as specified in the Agilent Acceptability Specification 930.610, as listed in Exhibit B." (Id. ¶ 31.) These promises became part of the basis of the bargain between Venture and [Plaintiffs]. (Id. ¶ 32.)
>
> Venture materially breached its express warranties by failing to produce fiber optic transceivers that confirmed [sic] to the specifications and met all quality requirements. (Complaint ¶ 33.) As a direct and proximate result of the breach . . . [Plaintiffs have] been damaged in an amount exceeding the jurisdictional minimum limit of [the Court]. (Id. ¶ 34.)

Under the GMSA's Product Warranty,

> Venture warrants that all Products will:
>
> Conform strictly to the Product Requirements (including those Specifications listed in Exhibit B), and other criteria referred to in this Agreement [and] be free from defects in workmanship as specified in the Agilent Acceptability Specification 930.610, as listed in Exhibit B . . . .

(Id., Ex. A § 10.1.)

As with Plaintiffs' First Cause of Action, Plaintiffs' Second Cause of Action makes the conclusory allegation that Venture breached the express warranty because the transceivers provided to Plaintiffs did not meet specifications and quality requirements incorporated under the GMSA. Neither Exhibit B, Agilent Acceptability Specification 930.610, nor any other specifications or quality requirements are included in Plaintiffs' Complaint. Further, Plaintiffs do not to allege which of the unstated, and potentially numerous, specifications or requirements were not met. Thus, Plaintiffs' allegations fail to provide notice of what their claim is and the grounds for that claim.

Accordingly, the Court GRANTS Venture's Motion to Dismiss Plaintiffs' Second Cause of Action for Breach of Express Warranty. As with their First Cause of Action, the Court finds that the

1 defects identified with Plaintiffs' Second Cause of Action may be cured by amendment. Thus,
2 Plaintiffs are granted leave to amend their allegations consistent with the terms this Order.

### B. Emcore's Motion to Dismiss

Emcore moves to dismiss Plaintiffs' Third Cause of Action for Negligent Interference with Prospective Economic Advantage on the ground California's "economic loss rule" bars Plaintiffs from bringing a negligent interference claim against an upstream component manufacturer for losses that are purely economic. (See Emcore Motion at 2; Plaintiffs' Opposition to Emcore Corporation's Motion to Dismiss at 4, Docket Item No. 19.)

#### 1. Application of the Economic Loss Rule

Emcore contends that, regardless of whether Plaintiffs adequately plead each element negligent interference, their claim is defective because they seek recovery for purely economic loss, which is barred under California's "economic loss rule." (Emcore Motion at 4.) Plaintiffs contend that their claim falls within the "special relationship" exception to the economic loss rule.

California generally bars tort claims for economic loss based on negligence. See, e.g. Anthony v. Kelsey-Hayes Co., 25 Cal. App. 3d 442, 446-47 (1972); Sacramento Regional Transit Dist. v. Grumman Flxible, 158 Cal. App. 3d 289, 298 (1984). There is, however, an exception to the economic loss rule in that, "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties [are] not in contractual privity." J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 804 (1979).

Under the J'aire exception, a court must consider six factors to determine if the parties have the requisite special relationship: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. Id.

8

Since Plaintiffs and Emcore are not alleged to be in contractual privity, the Court must determine whether Plaintiffs have alleged the requisite special relationship with Emcore, sufficient to permit them to proceed on a claim for negligent interference with prospective economic advantage. See J'Aire, 24 Cal. 3d at 804 (applying the six special relationship factors to the pleadings).

First, the Court must consider the extent to which the transaction was intended to affect Plaintiffs. California courts have held that the defendant's transactions must have been "specifically intended to affect the particular needs" of the plaintiff. Greystone Homes, Inc. v. Midtec, Inc., 168 Cal. App. 4th 1194, 2008 Cal. App. LEXIS 2376, *68 (Dec. 2, 2008). Here, Plaintiffs allege that Emcore's VCSEL was an "essential component" of its fiberoptic transceivers and that "Emcore knew of the relationship between Venture and [Plaintiffs and] was also aware that the VCSEL die would be incorporated into finished fiber optic transceivers and sold to [Plaintiffs'] customers." (Complaint ¶ 37.) Although Plaintiffs' allegations do not specifically state that Emcore manufactured VCSELs solely for Plaintiffs or that they were designed for Plaintiffs' particularized needs, this allegation does suggest that Emcore was aware that its product was an "essential component" of Plaintiffs' products. The Court finds that this allegation sufficiently states that Emcore's conduct was specifically intended to affect Plaintiffs' particular needs for VCSEL dies.

Second, the Court must consider the foreseeability of harm to Plaintiffs. Plaintiffs allege that Emcore knew or should have known that "if it did not act with due care . . . its action would interfere with the relationship between Venture and [Plaintiffs] and [Plaintiffs] and [their] customers." (Complaint ¶ 37.) Thus, Plaintiffs adequately allege that it was foreseeable that Emcore's negligence would interfere with Plaintiffs' prospective economic advantage.

Third, the Court must consider the degree of certainty that Plaintiffs suffered injury. Plaintiffs allege that they "suffered harm as a result of the defective VCSEL die in that . . . [Plaintiffs were] forced to compensate [their] customers for the defective products and/or cover with replacement products" and that Plaintiffs' "relationship with Venture and [Plaintiffs'] customers

9

were actually interfered with or disrupted." (Complaint ¶ 39.) Thus, Plaintiffs have alleged sufficient certainty with respect to Plaintiffs' harm.

Fourth, the Court must consider the closeness of the connection between Defendant's conduct and the injury suffered. Plaintiffs allege that, through reverse engineering, the parties ascertained that "the failures in the fiber optic transceivers were a result of a delamination between the mirror layers of the Emcore VCSEL die sold to Venture." (Complaint ¶ 15.) Thus, Plaintiffs have sufficiently alleged that Emcore's conduct directly caused their injuries.

Fifth, the Court must consider the moral blame attached to Defendant's conduct. A defendant's lack of diligence is particularly blameworthy where its conduct continues after the probability of damage is drawn to its attention. J'Aire, 24 Cal. 3d at 805. Here, Plaintiffs allege that Emcore's negligence "continued even after the cause of the field failures was brought to Emcore's attention." (Complaint ¶ 41.) Thus, Plaintiffs have sufficiently alleged blameworthiness with respect to Emcore's conduct.

Finally, the Court must consider the policy of preventing future harm. Public policy ordinarily requires that one should be held responsible when his lack of due care results in harm to another. See Cal. Civ. Code § 1714. Based on the allegations, Plaintiffs' injury was highly foreseeable given that Emcore's VCSEL component was essential to Plaintiffs' ultimate product. Considering the nature of Plaintiffs' allegations, the Court finds that public policy favors imposing a duty of care on Emcore.

In sum, the Court finds that Plaintiffs have sufficiently alleged a special relationship with Emcore under the J'Aire standard, such that the economic loss rule does not prevent Plaintiffs from proceeding with their claim for negligent interference with prospective economic advantage. The Court considers whether Plaintiffs have sufficiently alleged facts to state this claim.

**2.      Negligent Interference with Prospective Economic Advantage**

To state a claim for negligent interference with prospective economic advantage, a plaintiff must allege the following elements:

10

> (1) an economic relationship between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

North American Chemical Co. v. Superior Court, 59 Cal. App. 4th 764, 787 (1997).

In this case, Plaintiffs allege in relevant parts:

> Plaintiffs and Venture, a third party to this claim, entered into an Agreement that contained reasonably probable future economic benefit or advantage for Plaintiffs. (Complaint ¶ 36.) Emcore knew of the existence of the relationship between Venture and Plaintiffs. Emcore was aware, or should have been aware, that if it did not act with due care in design and manufacture its action would interfere with the relationship between Venture and Plaintiffs and Plaintiffs and their customers. (Id. ¶ 37.) The failures in the fiberoptic transceivers were a result of Emcore's negligent manufacture of the VCSEL wafers . (Id. ¶ 38.) Emcore's negligence caused damage to Plaintiffs in that their relationship with Venture and their relationship with their customers were actually interfered with or disrupted and Plaintiffs lost in whole or in part economic benefits or advantage reasonably expected from those relationships. (Id. ¶ 39.)

Plaintiffs have therefore alleged Defendant's knowledge of its contractual relationship with a third party, and that Defendant was aware that its lack of due care could cause Plaintiffs to lose the economic benefits associated with that third-party relationship. Plaintiffs have also alleged that Defendant was negligent, causing disruption to Plaintiffs' third-party relationship and corresponding injury to Plaintiffs' expected economic benefit from that relationship. Plaintiffs have thus stated a claim for negligent interference with prospective economic advantage.

Accordingly, the Court DENIES Emcore's Motion to Dismiss Plaintiffs' Third Cause of Action for negligent interference with prospective economic advantage.

## V. CONCLUSION

The Court GRANTS Defendants Venture's Motion to Dismiss Plaintiffs' First and Second Causes of Action with leave to amend. Any amendment shall be filed on or before **January 22, 2009** and shall be consistent with the terms of this Order.

11

1    The Court DENIES Emcore's Motion to Dismiss Plaintiffs' Third Cause of Action.

3    Dated:  December 22, 2008

                                                                    JAMES WARE
                                                                      United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Caroline Ann Haugsten Sayers csayers@whitecase.com
Dori Lynn Yob dyob@hopkinscarley.com
Erik Paul Khoobyarian epk@hopkinscarley.com
John Calvin Brown jbrown@redbrownlaw.com
John V. Picone jpicone@hopkinscarley.com
Matthew Paul Lewis mlewis@whitecase.com

Dated:  December 22, 2008          Richard W. Wieking, Clerk

                                   By:   /s/ JW Chambers
                                         **Elizabeth Garcia**
                                         **Courtroom Deputy**

**United States District Court**
For the Northern District of California